# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

STEVE A. CARTER,

    *Plaintiff*,

v.                              CASE NO. 12-CV-14529

COMMISSIONER OF             DISTRICT JUDGE PAUL D. BORMAN
SOCIAL SECURITY,               MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II.    REPORT

#### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability, Disability Insurance

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Benefits ("DIB"), and Supplemental Security Income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 10, 12.)

Plaintiff Steve Carter was 45 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 8 at 24.) Plaintiff's employment history includes work as a general laborer for six years. (Tr. at 156.) Plaintiff filed the instant claims on April 7, 2010, alleging that he became unable to work on March 20, 2010. (Tr. at 145, 134.)[2] The claims were denied at the initial administrative stages. (Tr. at 78, 79.) In denying Plaintiff's claims, the Commissioner considered disorders of the back, discogenic and degenerative, as possible bases for disability. (*Id.*) On June 27, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") Michael Wilkenun, who considered the application for benefits *de novo*. (Tr. at 6-19, 22-45.) In a decision dated August 17, 2011, the ALJ found that Plaintiff was not disabled. (Tr. at 16.) Plaintiff requested a review of this decision. (Tr. at 1.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on October 3, 2012, when, after review of additional exhibits[3] (Tr. at 121-33, 240-257), the Appeals Council denied Plaintiff's request for review. (Tr. at 1-5.) On October 15, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B. Standard of Review

---

[2] A prior unfavorable decision was issued on this date. (Tr. at 46-53.)

[3] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d

3

at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record,

4

regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the SSI program of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

5

Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.     ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements at all times pertinent through the date hereof and that Plaintiff had not engaged in substantial gainful activity since March 20, 2010, the alleged onset date. (Tr. at 15.) At step two, the ALJ found that Plaintiff's discogenic and degenerative disorders of the spine were "severe" within the meaning of the second sequential step. (Tr. at 11.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 11-12.) At step four, the ALJ found that Plaintiff could not perform any past relevant work. (Tr. at 14-15.) The ALJ also found that as of the alleged disability onset date, Plaintiff was 42 years old, which put him in the "younger individual age 18 - 44" category. *See* 20 C.F.R. Part 404, Subpart P, App. 2. At step five, the ALJ found that Plaintiff could perform a limited range of sedentary work. (Tr. at 12-14.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 16.)

**E.     Administrative Record**

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff suffered a back injury and, after approximately one month of symptoms, went to a doctor, who performed back surgery on Plaintiff in December 2001, which was within one week of his initial visit. (Tr. at 26-27.)

Plaintiff was treated at Henry Ford Health Systems Rehabilitation Services from 2010 to 2011. (Tr. at 202-39.) On April 19, 2010, x-rays of Plaintiff's lumbar spine revealed that "[d]egenerative disc disease is again seen at L5-S1. There is no subluxation on the dynamic images." (Tr. at 210.)

On May 7, 2010, an MRI of Plaintiff's lumbar spine showed "[d]egenerative changes within the mid to lower lumbar spine, with postsurgical laminectomy changes on the left at L5-S1. There is a small degree of granulation tissue surrounding the descending left S1 nerve root." (Tr. at 209.)

On June 21, 2010, Asim Mahmood, M.D., examined Plaintiff and suggested a treatment plan. (Tr. at 203-05.) Dr. Mahmood assessed the following impairments: (1) "Weakness in bilateral hip extension as well as abduction"; (2) "Radicular symptoms from low back along left leg extended to ankle"; (3) "Significant loss of range of motion in the low back in all directions with associated pain"; (4) "Loss of flexibility severe in left lower extremity and moderate right lower extremity in all major muscle groups including iliopsoas, quadriceps, hamstrings, and piriformis"; (5) "Antalgic gait with limp and decreased weightbearing on left lower extremity as well as decreased stance time and abnormal left lateral shift with rotation, cautious, but without assistive device"; (6) "Decreased single-leg stance to 15 seconds bilaterally"; (7) "Tenderness along the left piriformis and significant atrophy of the bilateral paraspinal muscles." (Tr. at 203.) Dr. Mahmood opined that Plaintiff would have moderate difficulty with grooming, sleeping, and prolonged standing, and severe difficulty with dressing, meal preparation, housework and gait such that he would require level surfaces. (*Id.*) Nonetheless, Dr. Mahmood also found that Plaintiff had "good rehabilitation potential" and set many goals regarding flexibility and strength, including that Plaintiff "should be ambulatory without limp with normal weight shift and normal weightbearing and improved rotation at trunk – 3 to 10 weeks." (Tr. at 204.) The overall goals were such that Plaintiff would have no or minimal difficulty with the tasks that Dr. Mahmood indicated he had moderate or severe difficulty doing at the time of the evaluation. (*Id.*)

Plaintiff received a caudal epidural steroid injection on March 3, 2011. (Tr. at 228, 233.) On March 30, 2011, it was noted that Plaintiff "tells us that his pain did not only not improve after his

8

previous injection, but worsened considerably and then returned only to his pre-procedural levels without any improvement whatsoever." (Tr. at 237.)

On April 25, 2011, it was noted that Plaintiff's "[g]ait [was] within normal limits." (Tr. at 238.)

At the administrative hearing, Plaintiff testified that his pain is located in the middle and left side of his lower back, radiating to his buttocks and left leg. (Tr. at 30-31.) Plaintiff indicated that he can sit or stand for around 30 minutes before needing to change positions. (Tr. at 32-33.) Plaintiff stated that he does not have any difficulties with his hands or arms except that "if I had to stretch and reach for something" it will "pull in the back." (Tr. at 33.) Plaintiff also stated that he can walk for about one block before having to stop. (Tr. at 33-34.) He also stated that he could lift 10 or 15 pounds and could carry around 10 pounds. (Tr. at 34.) Plaintiff testified that neither surgery nor physical therapy nor steroid injections helped with the pain. (Tr. at 35-36.) He stated that he lives with his mother and that he helps her with some of the household chores like fixing a light breakfast, doing dishes, or taking out the trash if the bag is not too big. (Tr. at 37.) Plaintiff indicated that he enjoys reading, listening to the radio, and that he occasionally "walk[s] down the street to a friend's house." (Tr. at 38.) Plaintiff testified that his back and leg pain are the only reason he is unable to work. (Tr. at 36.) Upon questioning from counsel, Plaintiff also explained that "sometimes the [daily prescription] medicine will make me drowsy, sleepy, dizzy." (Tr. at 38.) Plaintiff further indicated that he has to lie down "once or twice a day" for an "hour or two" and that he sits in his recliner once or twice during the day. (Tr. at 39-40.)

At the administrative hearing, the ALJ asked the Vocational Expert ("VE") to consider an individual with Plaintiff's background who

retains the residual functional capacity to sit six of eight hours of an eight-hour workday; stand and/or walk two of eight hours of an eight-hour workday; lift as much as ten pounds only occasionally, lesser weight somewhat more frequently.

May assume a well-established history of lower back pathology in the form of continuing pain and discomfort through the lower back and left lower extremity, all as a residual of what appears to be a less than wholly salutary surgical intervention a number of years ago. While the discomfort is undoubtedly disconcerting and recurrent, we assume for purposes of this query it does not occur with that degree of frequency, severity, intensity – or intensity to preclude functioning in the manner I suggested. It is, however, of sufficient consequence to limit him in the following ways. He should pretty much be allowed to change position between sitting and standing, moving about at his option.

He should not be required to perform any vocational activities wherein the rate of the work's productivity is dictated by an external source over which he has no control. In other words, he's limited to performing work essentially on his own, in his own worksite. Obviously activities requiring repetitive stooping, squatting, kneeling, or for that matter any postural activities would be contraindicated. Obviously should not be required to engage in prolonged or protracted walking or climbing of stairs, ladders, scaffolding, or what have you.

With respect to use of the upper extremities, he should not be required to use his arms above shoulder level for any stretching, reaching, pushing or pulling. Further, he should not be required to twist or torque his torso throughout the extremes of range of motion. Lastly you may assume the deficits suffered or the modalities employed to treat the same have neither interfered with his ability to perform the usual and customary cognitive aspects of vocational function, nor mandated that he lie down or otherwise be recumbent during the day.

(Tr. at 41-42.) The VE responded that such a person could not perform Plaintiff's past relevant work but could perform the 4,500 cashier, information clerk, and surveillance monitor jobs in the southeast area of the state or 6,000 such jobs statewide. (Tr. at 42-43.) In response to the ALJ's question, the VE confirmed that her testimony was consistent with the Dictionary of Occupational Titles ("DOT"), except that the DOT does not address a sit/stand option. (Tr. at 43.)

## F. Analysis and Conclusions

### 1. Legal Standards

The ALJ determined that during the time Plaintiff qualified for benefits, he possessed the residual functional capacity to perform a limited range of sedentary work. (Tr. at 12-14.) Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a)(1991). Social Security Ruling 83-10 clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10, 1983 WL 31251, at *5.

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

**2.      Substantial Evidence**

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 10.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ failed to give proper weight to the medical opinions of Plaintiff's treating physician, Dr. Mahmood (Doc. 10 at 13-20; Tr. at 203), failed to properly assess Plaintiff's credibility regarding his pain, limitations, and abilities (*id*. at 21-22), and therefore posed an incomplete and inaccurate hypothetical to the vocational expert. (*Id*. at 23-25.)

When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645, at *3 (6th Cir. Feb. 11, 1999) (unpublished). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036.

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such

12

severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.* Although a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," C.F.R. §§ 404.1528(a), 416.929(a), "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded *solely* because they are not substantiated by objective medical evidence." SSR 96-7p, at *1 (emphasis added). Instead, the ALJ must consider the following factors:

(i)   [D]aily activities;

(ii)  The location, duration, frequency, and intensity of . . . pain;

(iii) Precipitating and aggravating factors;

(iv)  The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)   Treatment, other than medication, . . . received for relief of . . . pain;

(vi)  Any measures . . . used to relieve . . . pain.

*Felisky*, 35 F.3d at 1039-40; SSR 96-7p, at *3. Furthermore, the consistency of the evidence, including a claimant's subjective statements, is relevant in determining a claimant's credibility. 20 C.F.R. § 404.1527(c); SSR 96-7p, at *5.

In the instant case, the ALJ thoroughly considered each of the above factors. (Tr. at 12-14.) The ALJ found that "while the claimant presumably experiences some discomfort, limitations, and restrictions from his impairments, the medical record in its entirety demonstrates that the claimant has no greater limitation in his ability to perform work activities than those reflected in the residual functional capacity reached in this decision." (Tr. at 14.) I suggest that the ALJ's findings are supported by substantial evidence.

The evidence reveals that despite the consistently noted degenerative disc disease at L5-S1 and unsuccessful laminectomy, it was also noted that "[t]here is no subluxation" and that, by 2011, Plaintiff's "[g]ait [was] within normal limits." (Tr. at 209, 210, 238.) Even though Dr. Mahmood noted several limitations based on Plaintiff's impairment (Tr. at 203), he also opined that Plaintiff "has good rehabilitation potential" and set many goals regarding flexibility and strength, including that Plaintiff "should be ambulatory without limp with normal weight shift and normal weightbearing and improved rotation at trunk - 3 to 10 weeks." (Tr. at 204.) The overall goals were such that Plaintiff would have no or minimal difficulty with the tasks that had previously caused limitations.

I therefore suggest that the ALJ's finding that Plaintiff was not fully credible is supported by substantial evidence and should not be disturbed. I further find that the ALJ's findings were not in conflict with Dr. Mahmood's opinion and, even if they were, that the ALJ properly discounted the opinion because it "appears to rely mostly on the claimant's subjective allegations." (Tr. at 14.) *See Masters v. Astrue*, 818 F. Supp. 2d 1054, 1067 (N.D. Ill. 2011) (noting that a "[d]octor's

notation in his notes of a claimed symptom or subjective complaint from the patient is not medical evidence; it is the 'opposite of objective medical evidence.' [Thus,] [a]n ALJ is not required to accept the statement as true or to accept as true a physician's opinion based on those assertions.") (citation omitted).

I further suggest that the ALJ's RFC analysis is also supported by substantial evidence for the same reasons as discussed above. In addition, Plaintiff was treated with prescription pain medication and at least one epidural steroid injection. (Tr. at 228, 233.) Such modest treatment is inconsistent with a finding of disabling symptoms. *See Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007).

In addition, The ALJ's limitation to sedentary work takes into account Plaintiff's own summary that it is only his back and leg pain that keeps him from working. (Tr. at 36.) I further note that the ALJ incorporated limitations into the hypothetical that were based on and would mollify Plaintiff's testimony that he can only sit or stand for around thirty minutes before needing to change positions, that he could lift and carry ten pounds, and that his back pain is exacerbated by stretching and reaching. (Tr. at 32-34, 41-42.)

Finally, I suggest that the hypothetical posed to the VE properly incorporated the limitations discussed above and was in harmony with the objective record medical evidence and Plaintiff's own testimony that he is able to do some of the household chores like fixing a light breakfast, doing dishes, or taking out the trash if the bag is not too big, that he enjoys reading and listening to the radio, and that he occasionally "walk[s] down the street to a friend's house." (Tr. at 37-38.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### 3. Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                         s/ Charles E. Binder
                                                         CHARLES E. BINDER
Dated: August 8, 2013                           United States Magistrate Judge

**CERTIFICATION**

    I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  August 8, 2013          By    s/Patricia T. Morris
                                              Law Clerk to Magistrate Judge Binder